ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

MANOMA REALTY MANAGEMENT, LLC,

        Plaintiff,

  -v-                                       No. 02 Civ. 0494 (LTS)(GWG)

FEDERAL PACIFIC ELECTRIC CO.,

        Defendant.

-------------------------------------------------------x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: JUL 2 6 2007

## OPINION AND ORDER

Plaintiff, Manoma Realty Management, LLC ("Manoma" or "Plaintiff") brings this action against defendant Federal Pacific Electric Company ("FPE" or "Defendant") seeking compensation for damages that Manoma incurred when a building it owned was damaged in a fire that it alleges was caused by a defective circuit breaker manufactured by FPE.[1]

FPE has moved for summary judgment, arguing that Manoma cannot establish that the circuit breaker was defective, or that any defect in it was the proximate cause of the fire. FPE has also moved to dismiss Plaintiff's claim of negligent design on the grounds that the opinion of Plaintiff's expert does not establish the basis for such a claim. FPE also moves to exclude, for various reasons, the report of Dr. Jesse Aronstein, Plaintiff's engineering expert (and with the exclusion of said report, FPE asks the Court to award it summary judgment on the grounds that Plaintiff can not establish defect and proximate cause); the report of Phil Meagher, one of Plaintiff's

---

[1] Defendant Rockwell Automation, Inc. d/b/a Rockwell International Corp. was discontinued from this action by stipulation in July of 2004, leaving FPE as the sole Defendant.

MANOMA MSJ.WPD      VERSION 7/26/07      Copies mailed counsel of record + MJ
Chambers of Judge Swain 7·27·07

fire origin and cause experts (and with the exclusion of said report, FPE asks the Court to award it summary judgment for Plaintiff's failure to establish the origin of the fire); the report of Frank Antonucci, Plaintiff's building damages estimate expert (and with the exclusion of said report, FPE asks the Court to dismiss Plaintiff's claims for damages to the building); and the report of Mark Perlmutter, Plaintiff's lost rental income estimate expert (and with the exclusion of said report, FPE asks the Court to dismiss Plaintiff's claims for loss of income). Manoma has cross-moved for entry of judgment for liability due to FPE's alleged spoliation of evidence, or, in the alternative, for a motion to bar or limit the testimony of FPE fire origin and cause expert Gene West.

For the reasons that follow, Defendant's motion is granted in part and Plaintiff's cross-motion is denied in its entirety.

## BACKGROUND

Except as noted, the following facts are undisputed. In accordance with the standard for summary judgment, the Court will "view evidence in a light most favorable to the non-moving party and draw all reasonable inferences in [its] favor." See American Cas. Co. of Reading, Pa. v. Nordic Leasing, Inc., 42 F.3d 725, 728 (2d Cir. 1994) (citation omitted).

On July 7, 2000, a fire broke out on the sixth and seventh floors of a seven story residential apartment building owned by Manoma and located at 216 East 203rd Street in the Bronx, New York. The principal points of disagreement between the parties involve which apartment the fire originated in and what caused it. FPE asserts that the fire started within an interior wall separating the kitchen from the bathroom of apartment 6E. Manoma alleges that the fire started in the "cockloft," or attic space, above apartment 7E, and was caused by manufacturing defects in a circuit breaker manufactured by FPE.

Fire Marshal Thomas McHugh of the New York City Fire Department investigated the fire and determined that the fire's origin was on the 6th floor of the apartment building. Fire Marshall McHugh determined that the fire began in the pipe recess (the space between the kitchen and bathroom wall) of apartment 6E and progressed vertically through the pipe recess into apartment 7E, where it spread horizontally through the cockloft to neighboring apartments. Two supervising fire marshals, Donald Vastola and Kevin Wallace, concurred in Fire Marshal McHugh's opinion. An investigation group retained by FPE, Guardian Investigation Group, also concurred in the opinion that the fire began near apartment 6E.

Manoma's insurance adjuster retained its own investigation company, Mammone & Company ("Mammone"), to determine the origin of the fire. Mammone investigators concluded that Fire Marshal McHugh was wrong, and that the fire had originated in the cockloft above the kitchen in apartment 7E, and that it began in the immediate area of a blowout in a BX type armored electrical cable that ran from the circuit breaker panel box in the living room of apartment 7E to an electrical outlet in the kitchen that supplied electricity to the refrigerator unit. One of Mammone's investigators, Philip Meagher, traced the problem to the third breaker from the right in the apartment's circuit breaker panel, which was a 20 amp breaker manufactured by FPE between 1960 and 1962.

On January 30, 2003, the circuit breaker at issue was submitted to a test widely recognized as the industry standard, the NEMA AB-4 test, and it responded within specifications. This test was observed by an expert for the Plaintiff, Dr. Jesse Aronstein. The circuit breaker was also tested four times on August 27, 2003 (another NEMA AB-4 test, a UL 200% trip test, a UL 135% trip test and a test developed by Dr. Aronstein), and all four tests were designed to guage the breaker's performance. Again, these tests were conducted in the presence of Dr. Aronstein, and the

circuit breaker tripped within specifications during these tests. The parties dispute whether these tests are able to demonstrate whether the circuit breaker operated properly at the time of an overload or a short.

Plaintiff's expert Dr. Aronstein has concluded that on the day of the fire, the circuit breaker either did not operate at all or that it operated too slowly, allowing heated material from the circuit or its protective or its protective steel cable to ignite combustible materials located near the cable. His report also concludes that there was a mis-routed braided wire which could have interfered with the breaker trip mechanism, and that the molded channel of the circuit breaker should have and could have been better designed to prevent assembly of the circuit breaker with a mis-routed copper braid. He points to evidence of heat stains on the circuit breaker in support of his conclusions. Defendant contests these conclusions.

## DISCUSSION

Summary judgment shall be granted when the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In opposing the motion, the nonmoving party may not rest on mere allegations of contested facts, but must "set forth specific facts showing that there is a genuine issue." Fed. R. Civ. P. 56(e). The facts will be viewed in the light most favorable to the party opposing the motion, and all reasonable inferences will be drawn on the nonmovant's behalf. American Cas. Co., 42 F.3d at 728. However, "[c]onclusory allegations, conjecture and speculation" do not establish a genuine issue of fact. Kerzer v. Kingly Mfg., 156 F.3d 396, 400 (2d Cir. 1998). Summary judgment is not appropriate if there are disputes about material facts "such that a reasonable jury could return a

verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see Rattner v. Netburn, 930 F.2d 204, 209 (2d Cir. 1991).

Notwithstanding the clearly disputed issues of material fact on the current record, FPE argues that it is entitled to summary judgment because certain elements of the record should be stricken on various grounds. Accordingly, the Court next reviews the parties' arguments with respect to the exclusion of certain evidence.

Exclusion of Evidence

*Report of Dr. Jesse Aronstein*

FPE argues that the Court should exclude the opinion of Dr. Jesse Aronstein as partisan testimony and/or because it is not in compliance with Fed. R. Civ. P. 26(a)(2)(B). Regarding its claim of partisanship, FPE asserts that Dr. Aronstein has engaged in a long professional crusade to label all FPE breakers defective and that this prior work undermines his credibility and reliability. Manoma counters that Dr. Aronstein is a careful and objective engineer with a broad background at the Consumer Products Safety Commission (CPSC) who has performed extensive testing of FPE products and has only spoken publicly about the defects that he has found in accordance with his ethical obligations as an engineer.

"[T]he court must take into consideration the expert's background and practical experience when deciding whether an expert is qualified to render opinion testimony." McCullock v. H.B. Fuller Co., 61 F.3d 1038, 1043 (2d Cir. 1995). In determining whether the expert is qualified to testify, "[t]he ultimate issue for the court to determine is whether the witness has 'specialized knowledge' through 'experience, training or education' as to the contents of his proposed expert testimony." Astra Aktiebolag v. Andrx Pharmacerticals, Inc., 222 F. Supp. 2d 423,

488-89 (S.D.N.Y. 2002).

The mere fact of Dr. Aronstein's prior extensive testing of FPE products as part of product safety investigations does not render his testimony so biased or partisan as to merit its exclusion. The two cases cited by Defendant in which expert testimony was not allowed because of partisanship and litigation-driven experience bear little resemblance to this case. In Mancuson v. Consolidated Edison Co. of New York, Inc., the purported expert had "self-educated" himself on the relevant scientific issue, two books given to him by the plaintiff's attorney were the two first references that the expert stated he relied upon in his report, and he was unable to answer essential scientific questions. Mancuson v. Consolidated Edison Co. of New York, Inc., 967 F. Supp. 1437, 1443-44 (S.D.N.Y. 1997). In Prohaska v. Sofamor, S.N.C., the purported expert "admitted he had never undertaken a specific review of the [relevant] medical literature." Prohaska v. Sofamor, S.N.C., 138 F. Supp. 2d 422, 436 (W.D.N.Y. 2001). By contrast, Mr. Aronstein's knowledge and experience relating to defects in circuit breakers is extensive. Defendant's arguments as to the weight and propriety of Dr. Aronstein's conclusions can be raised at trial. The motion to strike his report as partisan is, accordingly, denied.

In arguing that Dr. Aronstein's report does not comply with Fed. R. Civ. P. 26(a)(2)(B) and fails to meet the standards of admissibility for scientific testimony, FPE asserts that "[n]o data, testing methodology or empirical evidence is offered to support Aronstein's conclusions" and that "Aronstein opines, without proffering any specific information as to the actual cause of the alleged failure to trip and how that defect was the proximate cause of the fire." (Defendant's Memorandum of Law in Support of Motion for Summary Judgment, 17.) FPE further argues that the admissible evidence shows that the subject circuit breaker was tested multiple times both before manufacture and after the fire using tests with specifications that Aronstein approves

of, and has always functioned within specification. FPE claims that Aronstein's opinions are pure speculation and do not meet the criteria laid out in Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 597 (1993).

> Rule 702 of the Federal Rules of Evidence provides that:
>
> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

Reliability is one of the hallmarks of admissibility of expert testimony. Daubert, 509 U.S. at 597. See Fed. R. Evid. 702. Ordinarily, questions of credibility should not keep expert testimony from being admitted. See Daubert, 509 U.S. at 596; Hemmings v. Tidyman's, Inc., 285 F.3d 1174, 1188 (9th Cir. 2002). In assessing admissibility, the Court must determine whether the proffered testimony has a sufficiently "reliable foundation" to permit it to be considered. Daubert, 509 U.S. at 597. The Supreme Court in Daubert enumerated a list of factors that, while not constituting a "definitive checklist or test," could be considered by a district court in evaluating whether a proferred expert opinion has the required indicia of scientific reliability: "whether a theory or technique had been and could be tested, whether it had been subjected to peer review, what its error rate was, and whether scientific standards existed to govern the theory or technique's application or operation." Nimely v. City of New York, 414 F.3d 381 (2d Cir. 2005) (citing to Daubert, 509 U.S. at 593-94).

Dr. Aronstein's report, as supplemented by his affidavit, is sufficient to meet Plaintiff's burden of demonstrating that his testimony is the product of reliable principles and

methods. He has clearly explained his methods, which can be tested. Regarding peer review, Dr. Aronstein has presented multiple sources in support of his assertions that the pre- and post- fire testing does not demonstrate that the breaker properly tripped at the time of the fire, and that prolonged, inactive placement in the "on" position may inhibit proper performance in the event of overheating. He has also provided support, in the form of x-rays and also through the disassembly of the breaker itself, for his assertion that there was a misplaced copper wire. He has cited evidence in support of his allegation that the walls of the guide channel were low enough to allow for the misplacement of the copper braid. This information is sufficient to enable the jury properly to consider and weigh his testimony on the issues of proximate cause and defect.

Accordingly, because Dr. Aronstein's testimony will not be excluded, FPE's motion for summary judgment against Manoma on the grounds that Manoma can not establish defect and proximate cause is denied, as genuine issues of material fact remain regarding these issues.

*Report of Frank Antonucci*

FPE argues that the Antonucci report should be stricken because it is not supported by proof of payments and is only an estimate prepared for an insurance adjuster and thus is not in compliance with Fed. R. Civ. P. 26 (though FPE fails to identify which aspects of the rule it believes Mr. Antonucci's report to be in noncompliance with). Manoma argues that FPE's similar estimation report should be stricken if the Antonucci report is stricken. Rule 26(a)(2)(b) provides that an expert report:

> shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study

and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.

Fed. R. Civ. P. 26(a)(2)(b).

The Antonucci document lacks many of the features of an expert report as described in Rule 26. Indeed, it appears to be a contractor's very detailed document identifying repairs needed and estimating the cost of those repairs. In these respect is it quite similar to the somewhat less detailed estimate prepared by M. J. Minogue Associates and proffered by the defense (see Ex. P to Decl. of Mark L. Antin).

Neither party's papers affirmatively proffer any basis for a determination that the estimation reports meet the requisites of Rule 26, nor indeed any information as to the expert qualifications of the preparers. It is obvious from the content of the documents, however, that they purport to have been prepared based on personal observation of the premises and with an eye to identifying the necessary repairs. The Court denies both the application and cross-application to strike the Antonucci and Minogue documents, respectively, and reserves to trial the question of whether the information therein is properly proffered as expert or fact witness testimony. FPE's additional application for dismissal of Plaintiff's damages claim in respect of the building is denied.

### Report of Mark Perlmutter

FPE argues that Manoma expert Mark Perlmutter's report should be excluded for failing to comply with Fed. R. Civ. P. 26, in that Mr. Perlmutter has not been identified as an expert. Rule 26 requires that "a party shall disclose to other parties the identity of any person who may be used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of

Evidence." Fed. R. Civ. P. 26(a)(2)(A). By letter to counsel for FPE dated November 13, 2003, Manoma did identify Mr. Perlmutter as one of its experts. (See Antin Affidavit, Exh. S.) FPE appears to have conceded this fact by failing to rebut it in its reply papers, or to renew its request that Mr. Perlmutter's Report be excluded, and the Perlmutter Report will not be excluded. FPE's corresponding request that Plaintiff's claims for loss of income be dismissed is also, accordingly, denied.

*Report of Phil Meagher*

FPE argues that the report of Manoma expert Phil Meagher be excluded due to his failure to provide a signed report in accordance with Fed. R. Civ. P. 26. Exclusion of expert testimony has been termed a "drastic remedy." See Rmed Int'l, Inc. v. Sloan's Supermarkets, Inc., No. 94 Civ. 5587 (PKL) (RLE), 2002 WL 31780188, at *3-4 (S.D.N.Y. Dec. 11, 2002). Even in the event that a party has not strictly complied with Rule 26, precluding testimony of an expert "may at times tend to frustrate the Federal Rules' overarching objective of doing substantial justice to litigants." In re Kreta Shipping, S.A., 181 F.R.D. 273, 277 (S.D.N.Y. 1998). When determining whether to exclude expert testimony, a court should consider: "(1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified, (2) the ability of that party to cure the prejudice, (3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or of other cases in the court, and (4) bad faith or willfulness in failing to comply with the district court's [scheduling] order." Id.; Rmed Int'l, 2002 WL 31780188, at *

After FPE's papers arguing this point were served, the report was signed. (See Antin Affidavit ¶ 17.) Thus, the Court concludes that exclusion is not warranted here. FPE's

corresponding request that it be awarded summary judgment for Plaintiff's failure to establish the origin of the fire is also, accordingly, denied, as genuine issues of material fact regarding the origin of the fire clearly remain.

### *Gene West*

Manoma has cross-moved to bar or limit the testimony of FPE's fire origin and cause expert Gene West due to spoliation of evidence and lack of personal knowledge. The motion to exclude based on spoliation of evidence will be discussed below, along with the motion for entry of a judgment for liability due to spoliation of evidence. Regarding the motion to exclude for lack of personal knowledge, Manoma complains, that although there were other Guardian Insurance Group employees who personally visited the scene of the fire, only Gene West, who did not personally visit the fire scene, has been offered as an expert to testify at trial. As FPE points out, however, there is nothing in Federal Rule of Evidence 703 (which governs the bases of opinion testimony by experts) that precludes an expert from testifying simply because he or she has not personally been to the scene of the event. Mr. West bases his report on a photograph from the scene, and Rule 703 explicitly provides that "[t]he facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing." Fed. R. Evid. 703 (emphasis added). Mr. West's failure to personally visit the scene is not grounds for limiting or barring his testimony, and the application with respect to Mr. West's testimony is, accordingly, denied.

Sufficiency of Manoma's Pleadings Regarding Strict Liability and Breach of Warranty

In its attorney's affidavit, FPE argues (without much elaboration) that Manoma's Complaint merely sets forth a cause of action in negligence regarding the design and manufacture of the circuit breaker, but fails to set forth causes of action in either strict liability or breach of warranty. (SJ ¶ 6.) The Court construes this argument as a motion brought under Federal Rule of Civil Procedure 12(b)(6) to dismiss the Complaint for failure to state a claim upon relief can be granted to the extent it asserts claims for strict liability or breach of warranty. In its opposition papers, Manoma argues that its Complaint implicates strict liability, but does not address breach of warranty. Manoma's Complaint will, accordingly, be dismissed to the extent it can be construed to assert a claim for breach of warranty.

Regarding strict liability, Manoma's Complaint alleges, in relevant part, that "[a]t the time of [the fire], defendants' circuit breaker failed to operate properly," that this failure "resulted in a fire which caused substantial damages to the premises of Manoma," and that "[t]he fire and subsequent damage was a direct and proximate result of the carelessness, negligence, defective design and defective manufacture of the aforesaid circuit breaker." (Complaint ¶¶ 6- 8.)

Under New York strict products liability law, to state a claim, a plaintiff must show that the product was defective. See Voss v. Black & Decker Mfg. Co., 59 N.Y.2d 102, 106-107 (1983); Robinson v. Reed-Prentice, 49 N.Y.2d 471, 478 (1980). New York law recognizes three types of product defects: mistake in manufacturing, improper design, and inadequate warnings for the use of the product. Id. Manoma's pleading should, of course, be construed liberally. See Fed. R. Civ. P. 8(f). The Complaint explicitly alleges defective design and defective manufacture as causes of the malfunction at issue here. These allegations are sufficient to plead a cause of action for strict liability.

Manoma's Cross-Motion Regarding Spoliation

Manoma has filed a cross-motion seeking entry of a judgment for liability due to FPE's alleged spoliation of evidence. Manoma seeks this relief based on the alleged failure of Guardian Investment Group to adequately document conditions in the alleged area of fire origin in apartment 6E and to maintain and preserve physical evidence from that area. This claim stems from a joint inspection of the premises the parties conducted on July 27, 2000, with fire origin and cause experts from both sides present. While the Guardian Investment Group took only one picture in apartment 6E, they carefully inspected apartment 7E, where they took numerous photographs and collected physical evidence. Manoma argues that, based on this conduct, it assumed that FPE and its investigators agreed with Manoma's experts that the fire originated in apartment 7E, and that Manoma therefore did not seek to preserve all of the potential evidence in apartment 6E that was subsequently destroyed during remodeling.

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." West v. Goodyear Tire & Rubber Co., 167 F.3d 776, 779 (2d Cir. 1999). Although dismissal of a lawsuit is within the Court's discretion as a remedy for spoliation, it is a "drastic" one, and "should be imposed only in extreme circumstances, usually after consideration of alternative, less drastic sanctions." Id. (internal citations omitted). The Second Circuit has held that "[i]n order for an adverse inference to arise from the destruction of evidence, the party having control over the evidence must have had an obligation to preserve it at the time it was destroyed." Kronisch v. U.S., 150 F.3d 112, 126 (2d Cir. 1998) (emphasis added).

Here, FPE did not have control over the evidence in apartment 6E. Rather, Manoma did. Manoma's argument is, at best, that FPE should have prevented Manoma from destroying the

evidence that Manoma itself destroyed in its remodeling. However, Manoma was fully aware that the Fire Marshal had concluded that the fire began in apartment 6E, and nonetheless chose not to preserve the evidence. Because FPE did not have control over the evidence, it was not "under an obligation to preserve the evidence that [was] destroyed." Accordingly, Manoma's cross-motion seeking entry of a judgment for liability due to FPE's alleged spoliation of evidence is denied.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss the Complaint is granted to the extent the Complaint can be construed to assert a breach of warranty claim. Defendant's motion (docket entry #38) and Plaintiff's cross-motion (docket entry #55) are denied in all other respects. Counsel are directed to contact Magistrate Judge Gorenstein's Chambers to meet promptly with him for settlement purposes. As outlined in the corresponding scheduling order issued today, the Final Pre-Trial Conference in this case will be held on Friday, November 2, 2007 in Courtroom 17C.

SO ORDERED.

Dated: New York, New York
July 27, 2007

LAURA TAYLOR SWAIN
United States District Judge